THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Beverly Boatley*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Beverly Boatley, as the Personal Representative for the Estate of Decedent Elijah Boatley;[1] and as the wrongful death plaintiff under Arizona law;<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County, a political subdivision of the State of Arizona; and Sean Mendoza, in his individual capacity;<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

For her Complaint against Defendants Maricopa County, Arizona, and Sean Mendoza, Plaintiff Beverly Boatley, through undersigned counsel, hereby allege as follows:

**PARTIES**

1. Plaintiff Beverly Boatley is a single woman residing in Detroit, Michigan. She is the surviving grandmother of the late Elijah Boatley, will soon be appointed as the Personal Representative of his Estate, and brings claims both on behalf of Mr. Boatley's

---

[1] Plaintiff Beverly Boatley is awaiting formal appointment as the Personal Representative of Elijah Boatley's estate.

estate and on behalf of all statutory beneficiaries under Arizona's wrongful death act.

2.  Defendant Sean Mendoza is a Deputy with the Maricopa County Sheriff's Office. Upon information and belief, he resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Sean Mendoza was acting under the color of law, in furtherance of the interests of the Maricopa County Sheriff's Office, and within the course and scope of his employment for Maricopa County.

3.  Defendant Maricopa County, Arizona (the "County") is a political subdivision of the State of Arizona that can sue and be sued in its own name. The County runs a law enforcement agency known at the Maricopa County Sheriff's Office ("MCSO").

4.  The County is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and preserve for County residents the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona. The County has established or delegated to its law enforcement agency, MCSO, the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the County regarding the investigation, detention, arrest, and public relations during law enforcement operations.

5.  Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and Maricopa County, by their authority as sworn officers, and within the course and scope of their employment.

6.  Upon information and belief, there are currently unknown Maricopa County employees who caused or contributed to Plaintiff's injuries. The identity and roles of these individuals are uniquely within the possession of the County and Plaintiff will amend this complaint to add such responsible individuals upon discovery of their identities.

## JURISDICTION, AND VENUE

7. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1332, 1343(a)(3)(4) and 1367(a) because the parties reside in different states and this matters in controversy exceeds the sum or value of $75,000. This Court has jurisdiction over Plaintiff's claims for violation of her grandson's civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

9. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

## GENERAL ALLEGATIONS

### Phoenix Fire Department Break-In

10. On the night of September 11, 2019, Phoenix Fire Department employees interrupted two men attempting to break into a Fire Department vehicle. When the firemen attempted to catch the individuals, one of the men allegedly fired a gun.

11. No one was struck by the shot or injured, and it was never discovered whether the shot even came from the two men.

12. The Maricopa County Sheriff's Office ("MCSO") investigated the attempted robbery and identified a man named Matthew Marquez as a suspect.

13. Based on information allegedly provided by Mr. Marquez after his arrest, MCSO deputies identified 20-year-old Elijah Boatley as Mr. Marquez's accomplice.

14. After locating and identifying Elijah and his vehicle, MCSO's Fugitive Apprehension Tactical Enforcement ("FATE") unit began developing a plan for his arrest.

### FATE Plan for Arrest of Elijah

15. Based on the limited public records made available to date, it appears that the FATE unit put together an arrest team composed of Deputies Sean Mendoza, Larry Edwards, and J. Collins.

16. It further appears that the FATE unit planned to approach Elijah in the area where he was last seen—around 24th Street and Southern Avenue—and arrest him.

17. When the FATE unit arrived, however, they saw Elijah entering into the driver's seat of a Ford Explorer which they described as "loaded up" with passengers. When the Explorer drove away, the arrest team followed in an unmarked police van.

18. Once the Explorer stopped at a red light, the arrest team's vehicle pulled alongside it. The windows to the vehicle were down and officers noted at least two other women in the vehicle with Elijah.

19. When the light changed to green, the Explorer continued to a small, commercial plaza in South Phoenix with a Mini Mart.

### MCSO Attempts to Execute a High-Risk Arrest

20. Per the police reports, Elijah's decision to pull into a busy Mini Mart parking lot made the officers' "uncomfortable" with the plan to confront him there, and they initially called off the approach.

21. Within seconds, however, two women exited the Ford Explorer and entered the convenience store and the officers' changed their minds.

22. As Elijah sat in the driver's seat of the vehicle, with a baby secured in the backseat, Deputy Collins maneuvered the unmarked police van directly behind the Explorer, blocking its exit.

23. Deputy Sean Mendoza, who was seated in the back passenger seat of the police van, gripped his loaded assault rifle and shouted "Execute" before leaping from the vehicle. Larry Edwards followed.

### Deputy Sean Mendoza Kills Elijah

24. Deputy Sean Mendoza approached the vehicle first, pointing his department-issued AR-15 assault rifle with a tactical spotlight attached at Elijah.

25. Deputy Edwards also pointed his department-issued rifle, loaded with non-lethal rubber bullets, at Elijah.

26. Deputy Mendoza claimed that, as he stood behind the vehicle, he verbally commanded Elijah to exit the vehicle.

27. Elijah exited the vehicle, closed his car door, and turned to face the officers.

28. As he did so, Deputy Edwards fired a series of non-lethal rubber bullets at Elijah.

29. Deputy Mendoza immediately followed, firing 7-8 live rounds of lethal ammunition from his AR-15 at Elijah's chest, killing the 20-year-old boy.

### Conflicting Accounts and Evidence

30. After the shooting, Deputies Mendoza and Edwards authored incident reports as required by MCSO policy.

31. In his report, Deputy Mendoza claims that as Elijah exited the Ford Explorer, he was holding a handgun at "low ready." He further alleges that when Deputy Edwards fired non-lethal rounds at Elijah, Elijah raised the gun at the officers, justifying Deputy Mendoza in firing 7-8 rounds in response.

32. Deputy Edwards' report paints a different picture of the shooting: He claims that when Elijah exited the vehicle there was no gun in his hand. Rather, he claims that Elijah was "reaching for his waistband," which caused him to fire non-lethal rounds. After he fired these non-lethal rounds, he then "pied out" (i.e., sought cover) behind the Explorer before Elijah was shot.

33. The evidence recovered at the scene produces a third version of events: After the shooting, the officers recovered a Taurus 9 millimeter handgun from the scene. This

was presumably the handgun Deputy Mendoza claims to have seen, but later testing revealed that Elijah's fingerprints were <u>not</u> found on the weapon.

34. The surveillance camera footage, later obtained and released by MCSO, adds to the mystery: It shows Elijah being shot within *less than one second* after shutting his door and facing the officers, leaving little time to even reach for a waistband, let alone or raise a gun.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983—Excessive Force in Violation of the Fourth Amendment**
*(Against Defendant Mendoza Only)*

35. Plaintiff Beverly Boatley incorporates by reference all allegations asserted in the paragraphs above as though they were fully set forth herein.

36. 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

37. Elijah Boatley was a citizen of the United States, and Defendant Sean Mendoza is a "person" for the purposes of 42 U.S.C. § 1983.

38. Defendant Sean Mendoza was at all times relevant hereto, acting under the color of law, in his capacity as a Maricopa County Sheriff's Office deputy.

39. At the time of the above-mentioned, complained-of events, the Fourth Amendment to the United States Constitution clearly established Elijah Boatley's right to be secure in his person from unreasonable seizure through excessive force.

40. Defendant Mendoza violated these rights when he shot and killed Elijah Boatley.

41. Defendant Mendoza engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Elijah Boatley's federally protected constitutional rights.

42. The acts and omissions of Defendant Mendoza as described herein intentionally deprived Elijah Boatley of his constitutional and statutory rights, caused his death, as well as enormous pre-death pain and suffering as he lay dying from a gunshot.

43. Defendant Mendoza is not entitled to qualified immunity for the complained-of unconstitutional and illegal conduct.

44. As a proximate result of Defendant Mendoza's unlawful conduct, Elijah suffered significant pain and suffering before his death, and Plaintiff Beverly Boatley suffered actual injuries, by and through the loss of her grandson, and other damages entitling her to damages in amounts to be determined at trial.

45. Plaintiff Beverly Boatley is further entitled to attorneys' fees and costs under 42 U.S.C. § 1988, pre-judgment interest and costs allowable by federal law.

46. In addition to compensatory, economic, consequential, and special damages, Plaintiff Justina Hernandez is entitled to punitive damages against Defendant Mendoza under 42 U.S.C. § 1983, in that the actions of Defendant Mendoza were taken maliciously, willfully, or with reckless or wanton disregard of Elijah Boatley's constitutional rights.

**SECOND CLAIM FOR RELIEF**
**Wrongful Death under A.R.S. § 12-612 et seq.**
*(Against Defendant Maricopa County Only)*

47. Plaintiff Beverly Boatley hereby incorporates all allegations contained in the foregoing paragraphs as if they were full set forth herein.

48. All employees of Defendant Maricopa County, including Defendant Mendoza, owed Elijah Boatley a duty of reasonable care, namely, the duty to act as reasonable employees of a police department reasonably, under the circumstances, without

evincing a reckless disregard for Mr. Boatley's rights, life, and safety.

49.     The employees of Defendant Maricopa County, including Defendant Mendoza, breached their respective duties of reasonable care to Elijah Boatley when their gross negligence caused his death.

50.     Reasonable employees of a city or municipality in the respective positions of Defendant Mendoza and his fellow officers would not have acted in the manner these individuals did.

51.     As a direct and proximate result of the employees acts and omissions, Plaintiff and Elijah Boatley's statutory beneficiaries were injured by and through the loss of her grandson and suffered damages in an amount to be proven at trial.

52.     As set forth herein, Defendant Mendoza and other officers were acting within the course and scope of their respective employment as police officers for Maricopa County: they were Maricopa County employees, performing acts they were authorized to perform; they were on-duty, working in their regular job capacities; and their actions were motivated, at least in part, by a purpose to serve Maricopa County.

53.     Because Defendant Mendoza and the other officers were acting within the course and scope of their respective employment for Maricopa County, Maricopa County is vicariously liable for the damages caused by these employees' tortious conduct.

54.     In addition to its vicarious liability, Maricopa County is also directly liable for gross negligence insofar as Elijah Boatley's death was the product of the County's hiring, training, and supervising practices evinced a reckless disregard for the rights and safety of individuals in Alejandro's position.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Beverly Boatley hereby requests that the Court enter judgment against Defendants and issue an award in Plaintiff's favor as follows:

a. For damages incurred by Elijah Boatley's survivors and statutory beneficiaries in this matter, in amounts to be proven at trial;

b. For the damages incurred by Elijah Boatley's estate, including medical expenses, funeral costs and other special damages, in addition to the pain, suffering, and anguish Elijah Boatley suffered prior to his death;

c. For damages in an amount to compensate Plaintiff fairly and fully for the numerous violations Elijah Boatley's constitutional rights;

d. For punitive damages under 42 U.S.C. § 1983 and as provided for by Arizona law;

e. For nominal damages as provided for by law;

f. For prejudgment interest on all liquidated sums;

g. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by Arizona law;

h. For Plaintiffs' costs and other expenses incurred in this action; and

i. Such other and further relief as the Court deems just.

DATED this 14th day of September, 2020.

THE PEOPLE'S LAW FIRM, PLC
645 North 4th Avenue, Suite A
Phoenix, Arizona  85003

By: /s/ Stephen D. Benedetto
      Stephen D. Benedetto
      Heather Hamel

*Attorneys for Plaintiff Beverly Boatley*